# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

WENDELL C. CALDWELL,

    Petitioner,

    v.

ACTING WARDEN C.L. WEBER,

    Respondent.

Civil Action No. BAH-21-852

## MEMORANDUM

Self-represented Petitioner, Wendell C. Caldwell ("Petitioner"), filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 against Acting Warden, C.L. Weber ("Respondent"), challenging the execution of his sentence by the Bureau of Prisons ("BOP"). ECF 1. Upon review of the submitted materials, the Court finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Petition is denied.

## I.       BACKGROUND

On December 19, 2019, Petitioner was sentenced by the United States District Court for the Northern District of Ohio to 64 months imprisonment followed by four years of supervised release for (1) attempting to possess a controlled substance with intent to distribute, and (2) being a felon in possession of a firearm and ammunition. ECF 9-1, at 6; ECF 1, at 1.

On April 3, 2021, Petitioner filed his § 2241 petition with the Court, asserting that the BOP (1) failed to apply earned time credits under the First Step Act ("FSA"), 18 U.S.C. § 3632(d)(4)(A); (2) failed to transfer him to a pre-release halfway house; (3) failed to credit him with a one-year sentence reduction for completion of the Residential Drug Abuse Program ("RDAP"); and (4) wrongfully denied his request for compassionate release based on his contraction of COVID-19.

ECF 1, at 6–8.  In a prior order,[1] the Court dismissed Petitioner's request for compassionate release without prejudice, because such a request must be brought before his sentencing court, the United States District Court for the Northern District of Ohio.  *See* ECF 2.

Petitioner was projected to be released on November 9, 2022.  *See* ECF 9 ¶ 2.  The undersigned consulted the BOP inmate locator and confirmed that he was released from custody on August 4, 2023.  *See Find an Inmate*, Federal Bureau of Prisons, www.bop.gov/inmateloc/ (last accessed January 9, 2024).

## II.    STANDARD OF REVIEW

"The Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with statutory provisions or [the Rules Governing Section 2254 Cases], may be applied" to habeas corpus proceedings.  Rule 12, *Rules Governing § 2254 Cases in the U.S. Dist. Cts*.; *see also* Rule 1(b), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.* (§ 2254 Rules apply to habeas corpus petitions filed under provisions other than § 2254).

In this case, Respondent filed an answer to the petition concurrently with his request for dismissal.  *See* ECF 9.  Therefore, the motion can be construed as either a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure or a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).  "However, the distinction is one without a difference," *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 404 (4th Cir. 2002), and both motions may be filed in habeas actions.  *Walker*, 589 F.3d at 139; *see also Martin v. U.S. Parole Comm'n*, Civ. No. PWG-17-

---

1 This matter was previously assigned to another district judge and was transferred to the undersigned on October 23, 2023.

3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).  In this case, the Court exercises its discretion to evaluate Respondent's answer as a motion to dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted."  In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff [or petitioner]."  *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [petitioner] is entitled to relief").  "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'"  *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the petitioner's] claim to show that [the petitioner] has a more-than-conceivable chance of success on the merits."  *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'"  *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v.*

3

*Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).  The Court construes the following documents as integral:  ECF 1-1, including Petitioner's complaints and appeals, and ECF 9-1, at 16–24, including the administrative record of the appeals.

## III.   DISCUSSION

A § 2241 petition may be filed to contest the manner in which a sentence is executed.  *In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (*en banc*) ("[A]ttacks on the execution of a sentence are properly raised in a § 2241 petition."); *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) ("A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity. . . .").  To be entitled to the issuance of a writ of habeas corpus, a prisoner must show that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c); *Estelle v. McGuire*, 503 U.S. 62, 67–68 (1991).

Because Petitioner is now released and on supervised probation, ECF 9, at 6, the Court must determine what portion of his petition, if any, presents a live case or controversy.  Petitioner's claims relating to the BOP's failure to transfer him to a halfway house before his release are moot.  *See infra* Section II.A.1.  Even assuming without argument that Plaintiff's first and third claims, which relate to calculations of FSA and RDAP credits are not moot, they will be dismissed due to a lack of administrative exhaustion.

### A.   Mootness

The Court must confront the doctrine of mootness, given that Petitioner is released from custody and on supervised release.  *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) (finding a court is deprived of jurisdiction over a case when the case becomes moot); *United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018) (explaining that mootness is jurisdictional and the court

must consider it even when no party has raised the issue); *United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013) ("Mootness is a jurisdictional question and thus may be raised sua sponte by a federal court at any stage of proceedings.").

"The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction, which extends only to actual cases or controversaries." *Fleet Feet, Inc., v. NIKE, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021) (quoting *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017)). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)). This means that, throughout the litigation, a plaintiff or petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lewis*, 494 U.S. at 477). "If intervening factual . . . events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693–94 (4th Cir. 1983). A case no longer presents an actionable controversy and thus becomes moot when it is "impossible for [the] court to grant any effectual relief whatever to a prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)).

1.   Petitioner's Claims Relating to Placement in a Halfway House are Moot.

"As a general rule, a prisoner's transfer or release from a particular prison moots his claim for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Dixon v. Thompson*, Civ. No. 3:23-119, 2023 WL 3372379, at \*1 (M.D. Pa. Apr. 24, 2023) ("[O]nce a prisoner is released from custody, a habeas challenge to some aspect of his confinement

will become moot absent a redressable, continuing, and concrete injury which persists after his release.").  This is true, for instance, where a petitioner requests transfer to a halfway house or residential reentry program and during the pendency of the habeas proceeding receives the transfer. *See McKinney-Bey v. Hawk-Sawyer*, 69 F. App'x 113, 113–14 (4th Cir. 2003) (affirming dismissal of § 2241 petition as moot, where petitioner sought immediate transfer from prison to half-way house, and petitioner received transfer prior to consideration by Court of Appeals); *Ware v. Alderson*, Civ. No. 1:23-00470, 2023 WL 4855308, at *1 (S.D.W. Va. July 10, 2023) (holding petitioner's prospective injunctive relief requested, transfer out of isolation into the general population of a prison, was mooted when she was transferred out of prison into a residential reentry program); s*ee also Brown v. Phelps*, Civ. No. 1:20-2747-HMH-SVH, 2021 WL 413686, at *2–3 (D.S.C. Jan. 20, 2021), *report and recommendation adopted*, Civ. No. 1:20-2747-HMH-SVH, 2021 WL 409855 (D.S.C. Feb. 4, 2021) (holding petitioner's request to be granted home confinement or transfer to a residential reentry center was mooted when he was transferred to a residential reentry center during the pendency of the case); *Walker v. Sanders*, 385 F. App'x 747 (9th Cir. 2010) (mem.) (affirming district court's dismissal of § 2241 petition as moot where petitioner sought immediate transfer to a rehabilitative reentry center ("RRC"), and petitioner was placed at an RRC during pendency of the proceeding); *Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008) (dismissing § 2241 appeal as moot because prisoners had received the requested relief of placement in an RRC).

There are, however, two exceptions to this general rule: the "capable of repetition, yet evading review" exception and the "collateral consequences" exception.  The former exception applies only when there is a "demonstrated probability" that the challenged action will recur again, to the same complainant, and the nature of the complaint makes it likely that intervening events

will continue to render any similar complaints moot. *Incumaa*, 507 F.3d at 289. The latter exception, which permits judicial review when there are "collateral consequences," is presumed when a petitioner challenges the conviction itself, as opposed to the conditions of confinement. *Compare Sibron v. New York*, 392 U.S. 40, 55–57 (1968) (presuming collateral consequences when challenging a criminal conviction unless "it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction"), *with Lane v. Williams*, 455 U.S. 624, 632–33 (1982) (holding convicted felons who had violated parole and were challenging their sentences of three years' mandatory parole at the conclusion of their terms of incarceration were moot even if the revocations of parole could be used to their detriment in future parole proceedings should they ever be convicted of other crimes).

In the present petition, Petitioner requests: (1) transfer to a halfway house; and (2) application of earned time credits to his sentence he believes he is entitled to under both the First Step Act ("FSA") and based on his completion of a Residential Drug Abuse Program ("RDAP"). ECF 1, at 5–8. As indicated by the BOP inmate locator, Petitioner was released on August 4, 2023. *See Find an Inmate*, Federal Bureau of Prisons, www.bop.gov/inmateloc/ (last accessed Dec. 15, 2023). The Court finds that consistent with the above cited cases, because petitioner has been released, the Court is unable to provide him meaningful relief as to the first of his requests. Additionally, neither of the two exceptions to the mootness doctrine apply to this claim. *See, e.g.*, *Ware v. Alderson*, Civ. No. 1:23-00470, 2023 WL 4855308, at *1–2 (S.D.W. Va. July 10, 2023) (dismissing habeas petition requesting transfer to halfway house when petitioner was provided the relief during the pendency of the case and declining to apply the two exceptions to the mootness doctrine). Therefore, the Court dismisses his request for transfer to a halfway house as moot due to his intervening release.

2.   <u>Petitioner's Time Credit Calculation Claims are Not Moot.</u>

It is less obvious whether petitioner's claims regarding the misapplication of time credits under the FSA and his entitlement to RDAP credits are moot.  On the one hand, the Fourth Circuit has held that overserving the custodial portion of a sentence cannot be remedied via, for instance, the shortening of a supervised release period.  *Jones v. Bolster*, 850 F. App'x 839, 839 (4th Cir. 2021) (per curiam) (holding petitioner's request for the restoration of his good-time credits was "moot because any time he allegedly overserved cannot be applied to shorten his supervised release term") (citing *United States v. Jackson*, 952 F.3d 492, 498 (4th Cir. 2020)).

On the other hand, "[q]uestions about banked time [] arise in the context of supervised release."  *Jackson*, 952 F.3d at 498.  The "BOP has created extensive regulations concerning its duty to calculate sentences, including the treatment of banked time."  *Id.*  Among other things, BOP's regulations provide that "[a]ny prior custody time spent in official detention after the date of offense that was not awarded to the original sentence or elsewhere shall be awarded to the revocation term" when a defendant is sentenced to a term of incarceration for violating his supervised release.  *Id.* (quoting BOP Program Statement § 5880.28, Sentence Computation Manual-CCCA of 1984 (1999) at 1–69).  Thus, a determination that the petitioner overserved time in incarceration would be banked, or credited to him, *only* if he were to violate the conditions of his supervised release *and* be sentenced to serve a term of incarceration as a penalty.

This conclusion is, however, in tension with the idea that courts are to presume petitioners are not going to break the law or violate terms of their supervisory release.  *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("[W]e are . . . unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws.  We assume that respondents will

conduct their activities within the law and so avoid prosecution and conviction.").  Additionally, this conclusion clashes with the idea that the injury must be concrete, and not merely speculative. *Spencer v. Kemna*, 523 U.S. 1, 15 (1998) (rejecting collateral consequences exception's application to a parole violation on the basis that the parolee may commit a different crime in the future and have less favorable parole opportunities); *Ware*, 2023 WL 4855308, at *3 ("Mere conjecture . . . that the prisoner may return to the first prison and again face the alleged wrong is not sufficient to meet the mootness exception." (quoting *Owens v. FCI Beckley*, Civ. No. 5:12-03620, 2013 WL 4519803, at *7 (S.D.W. Va. Aug. 27, 2013))).  The Court need not address this tension in the present case since, even assuming that Petitioner's time crediting claims are not moot, they nevertheless fail for a lack of administrative exhaustion.

### B.      The FSA and RDAP Time Credits

Petitioner's arguments that he is owed FSA[2] credits and that he is owed a reduction of his sentence based on completion of the RDAP[3] program are unexhausted.  Petitioner argues that he should be credited FSA time credits for completed programs.  ECF 1, at 6–7.  Petitioner

---

[2] The First Step Act ("FSA") of 2018, 18 U.S.C. § 3621, governs the calculation of federal prison sentences.  18 U.S.C. § 3624(b) allows federal inmates to earn additional good time credits.  *Knight v. Bell*, Civ. No. JKB-20-3108, 2021 WL 1753791, at *3 (D. Md. May 4, 2021).  The FSA allows the BOP to award inmates a maximum of 54 days of good time credits per year of their imposed sentence rather than 54 days of credit per year of their sentence served, thereby increasing the maximum allowable good time credits from 47 days to 57 days per year.  *See Knight*, 2021 WL 1753791, at *3 (citation omitted), *report and recommendation adopted*, 2020 WL 1917490 (N.D.W. Va. Apr. 20, 2020).  Under the FSA, inmates are eligible to earn up to 10 days of time credits for every 30 days of successfully completed recidivism reduction programming.  *See Murph v. Andrews*, Civ. No. 3:20-474, 2021 WL 3575844, at *2 (E.D. Va. Aug. 12, 2021) (citing 18 U.S.C. § 3632(d)(4)(A)).

[3] The Residential Drug Abuse Program ("RDAP") provides an opportunity for prisoners convicted of a nonviolent offense to reduce their time in incarceration if they successfully complete a treatment program, though "reduction may not be more than one year from the term the prisoner must otherwise serve."  18 U.S.C. § 3621(e)(2)(B).

acknowledges the administrative exhaustion requirement under § 2241 petitions and states he did exhaust his administrative remedies. ECF 1-1, at 1. Respondent argues, however, that Petitioner failed to administratively exhaust this claim. ECF 9, at 3. In the event a prisoner disputes the computation of his sentence or the application of credits, he is permitted to seek a remedy for the grievance through the administrative remedy process in place in the BOP facilities. *See* 28 C.F.R. 542.10, *et seq*.

The Administrative Remedy Procedure provides that if a prisoner is unable to resolve his complaint informally, he may file a formal written complaint using the proper form within twenty (20) calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If a prisoner is not satisfied with the Warden's response, he may appeal to the appropriate Regional Director within twenty (20) calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the prisoner still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel using the appropriate forms. *Id.* The prisoner must file this final appeal within thirty (30) calendar days of the date the Regional Director signed the response. *Id.* A prisoner is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See id.*

While in BOP custody, Caldwell has filed thirteen (13) administrative remedy requests. ECF 9-1, at ¶ 9; 9-1, at 17-24. Caldwell filed Remedy 1066262-R1 concerning his FSA credits, which he appealed to the Regional Director but failed to seek final review with the Office of General Counsel. *Id.* at ¶ 10, p. 23. He also filed Remedy 1055549-A1 concerning the RDAP program, which he failed to properly appeal to the Office of General Counsel; it was rejected for being untimely and Caldwell was instructed to provide staff verification that the untimely filing

was not Petitioner's fault. *Id.* at ¶ 11, p. 23.  Petitioner has not provided the verification. *Id.* at ¶ 12.

Respondent seeks dismissal on the basis that Petitioner did not exhaust his administrative remedies. ECF 9, at 8.  Section 2241 does not contain an exhaustion provision; nevertheless, "courts have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under that statute." *Salomon v. Heckard*, Civ. No. 5:22-00081, 2022 WL 2446286, at *3 (S.D.W. Va. June 6, 2022) (citing *Braden v. 30th Judicial Cir. Ct.*, 410 U.S. 484, 490–91 (1973)), *report and recommendation adopted*, Civ. No. 5:22-00081, 2022 WL 2442090 (S.D.W. Va. July 5, 2022).

The Court may, in its discretion, waive the exhaustion requirement under certain circumstances, such as "when a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Wright v. Warden*, Civ. No. RDB–10–671, 2010 WL 1258181, *1 (D. Md. Mar. 24, 2010) (quoting *Rose v. Lundy*, 455 U.S. 509, 515–16 (1982)).  Absent "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent . . . courts require exhaustion of alternative remedies before a prisoner can seek federal habeas relief." *Timms v. Johns*, 627 F.3d 525, 530–31 (4th Cir. 2010) (citations and internal quotation marks omitted).

In this case, both relevant administrative filings Petitioner submitted were unexhausted. First, Petitioner's administrative remedy regarding his belief that he was entitled to FSA Credits, Remedy 1066262-R1, was never appealed to the Central Office. *See* ECF 9-1, at 23.  Plaintiff's Remedy 1055549, regarding his RDAP eligibility, was improperly appealed to the Central Office, ECF 1-1 at 33–34, because it was deemed untimely, and Petitioner failed to provide staff

verification for his lack of fault in the untimely filing.  ECF 901, at 23 (including record of rejection of appeal due to untimely filing and requirement to "provide staff verification for delay in filing"); ECF 1-1, at 31–36 (including appeal paperwork regarding RDAP eligibility but failing to provide proof Petitioner provided the Central Office staff verification excusing the untimely filing).  This case does not present one of the extraordinary instances in which a court may waive the exhaustion requirements.

Thus, the Court finds Petitioner has not exhausted the BOP's administrative remedy procedures on his claim for time credits under the FSA or based upon his completion of the RDAP, and these claims must be dismissed.  Because the Court dismisses these claims on the basis of exhaustion, it will not reach Respondent's arguments that Petitioner's FSA claim is not ripe for review, that Petitioner's PATTERN score excludes him from eligibility for earned time credits, or that the Court is precluded from reviewing the BOP's determinations of RDAP credit eligibility.

## IV.    CERTIFICATE OF APPEALABILITY

Finally, the Court has considered whether to grant a certificate of appealability.  *See* 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that this Court's assessment of the constitutional claims in this case is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).  The Court concludes that the governing standard is not satisfied in this instance.  Accordingly, the Court will not issue a certificate of appealability.

## V.      CONCLUSION

For the foregoing reasons, Caldwell's Petition for Writ of Habeas Corpus will be denied

and dismissed.  The Court declines to issue a Certificate of Appealability.

A separate implementing Order follows.


Date: <u>January 9, 2024</u>                                          <u>            /s/            </u>
                                                                      Brendan A. Hurson
                                                                      United States District Judge